**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case number: 3:26-CR-110-E** |
| | § | |
| **GARRY BOYD,** | § | |
| **Defendant.** | § | |

**OPINION AND ORDER**

Before the Court are Defendant's Motion to Suppress and Request for Evidentiary Hearing (ECF No. 27) and the Government's Response (ECF No. 29). Having reviewed the briefing and the applicable case law, the Court **DENIES** Defendant's Motion to Suppress and Request for Hearing.

## I. BACKGROUND[1]

In March 2025, the Dallas Police Department (DPD) Animal Cruelty Unit (ACU) began investigating a group of individuals suspected of organizing dog fighting within the Dallas area. DPD initiated the investigation based on information received from previous arrests and a law enforcement investigation indicating organized dog fighting events were taking place. These investigations entailed surveillance and intelligence collection permitting law enforcement agencies to find individuals, locations, and other matters involved in dog fighting. The Government's briefing states that investigators through aerial surveillance of a dog fighting event led to Darrell Boyd being identified as person of interest, as his vehicle's license plate was seen leaving the event. Additionally, the Government's briefing states that further investigation showed

[1] Unless otherwise noted, the Court's recitation of the facts is taken from the motion briefing. ECF 27, 29, 30.

Darrell Boyd frequented the Stallings Addition, where Darrell's uncle—Defendant Garry Boyd—resides. In an application for a search warrant of [a location on] Chappell St., Terrell Police Department Detective RJ Waters's affidavit swore to the following:[2]

> • [Garry Boyd's property on] Chappell St., Terrell, Texas, in a map view of the property dated 2022 revealed disturbed terrain in the rear of the property and numerous items scattered throughout the yard, resembling junk or debris.
>
> • On Thursday, January 29, 2026, at approximately 1300 hours, the Affiant executed a drone search warrant at [Garry Boyd's property on] Chappel St., Terrell, Texas for the purpose of locating dogs and/or dog-fighting equipment. During the aerial search, the Affiant observed at least four (4) dogs secured by heavy chains affixed to their collars
>
> • The Affiant further observed several makeshift kennels located throughout the property. Some appeared functional, while others appeared damaged or unusable.
>
> • Based on the totality of the circumstances, the Affiant believes there is probable cause to believe that evidence related to Dog Fighting and Cruelty to Non-Livestock Animals, including dogs, dog-fighting equipment, training devices, records, and other instrumentalities of the offense, will be found at the described location.
>
> • Based on the Affiant's training and experience, the use of heavy chains affixed to dogs, the placement of multiple dogs in isolated positions with deliberate spacing, the use of makeshift kennels and plastic doghouses, and observable drag marks indicating prolonged tethering are consistent with methods commonly used in organized dog-fighting operations.

Detective Waters's affidavit also described the methods, tools, and conditions associated with organized dog fighting. Det. Waters's affidavit asserted that probable cause existed to believe Darrell Boyd was using Garry Boyd's property to store and train fighting dogs and identified the evidence expected to be found at the property.

On February 9, 2026, Detective RJ Waters obtained a search warrant from Kaufman County Judge Blaire for Garry Boyd's property, supported by Waters's affidavit. The warrant sought (1) "[p]roperty the possession of which is prohibited by law, namely Texas Penal Code

---

[2] Pl. Ex. 1 at 5, ECF No. 30.

42.10, Dog Fighting," and (2) "[i]mplements or instruments used in the commission of a crime, namely Texas Penal Code 42.10, Dog Fighting."

On February 10, 2026, TPD executed the search warrant at Garry Boyd's residence and found four pit bulls, chains, collars, and other items, as well as two handguns, three rifles, and two shotguns. Though it is not stated in the application, the police knew beforehand that Defendant is a convicted felon and, therefore, was prohibited from possessing a firearm. Defendant was then arrested and interviewed at the Terrell Police Department. Defendant allegedly told officers he was the residence's sole occupant, that the dogs belonged to his nephew Darrell, and that he owned several firearms, some kept in his shed and vehicle.

Soon after, United States Magistrate Judge Toliver signed a criminal complaint and arrest warrant for Garry Boyd. After his arrest, Defendant made his initial appearance before Judge Toliver on February 13, 2026, and the case was continued for a detention hearing. On February 20, 2026, United States Magistrate Judge McKay held a probable-cause and detention hearing and ordered Defendant released on conditions.

On March 4, 2026, a federal grand jury returned a one-count indictment charging Defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). On September 21, 2026, Defendant filed his Motion to Suppress and Request for Hearing, challenging the validity of the search warrant.

## II. LEGAL STANDARD

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978). The Fourth Amendment additionally provides "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. Evidence

obtained in violation of the Fourth Amendment is to be excluded in criminal proceedings against the victim of the violation. *United States v. Buchanan*, 70 F.3d 818 (5th Cir.1996).

When the evidence at issue is obtained pursuant to a search warrant, "[f]irst, we determine whether the good-faith exception to the exclusionary rule applies." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). Under the good-faith exception, "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Norman*, 129 F.4th 874, 876 (5th Cir. 2025) (quoting *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992).

The good-faith exception analysis "ordinarily depend[s] on an examination of the affidavit." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (quoting *United States v. Gant*, 759 F.2d 484, 487–88 (5th Cir. 1985)). This exception does not apply if the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Additionally, there are four narrow exceptions to the application of the good faith doctrine: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *Payne,* 341 F.3d 393, 399–400 (5th Cir. 2003). Under the third exception, such affidavits lacking probable cause are considered "bare-bones affidavits" which "do not detail any

facts, they allege only conclusions." *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022). Bare-bones affidavits typically contain "wholly conclusory" statements such as the "the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe.'" *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (internal quotations omitted).

**III. ANALYSIS**

Defendant, Garry Boyd, moves to suppress all evidence obtained during and after that search and requests an evidentiary hearing, arguing (1) that the warrant lacked probable cause; and (2) that the good-faith exception does not apply.[3] The Government argues (1) the search warrant was not based on a "bare bones" affidavit, (2) that the good-faith exception to the exclusionary rule applies, (3) the search warrant was issued on a valid finding of probable cause, therefore the Court should deny Boyd's request for a *Franks* hearing because Defendant has failed to meet his burden of proof to justify it.[4] The Court addresses the application of the good-faith exception.

**A. Application of Good-Faith Exception**

Defendant complains the executed search warrant in this case was lacking in probable cause, and thus the good faith exception cannot save it.[5] Defendant raises the third exception to the good-faith doctrine, the "bare-bones" exception: where a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization because the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence unreasonable.[6] *Morton*, 46 F.4th at 336. The Government argues Detective Waters's affidavit is not bare-bones

[3] Def. Mot. Suppress 1, ECF No. 27.
[4] Pl.'s Resp. Mot. Suppress 1, ECF No. 29.
[5] Def. Mot. Suppress 3, ECF No. 27.
[6] *Id.*

because it recited specific facts to support a fair probability that property to be searched would produce evidence that the property was being used to train dogs for dog fighting.[7]

In the Fifth Circuit, a two-part test applies to search warrants. *United States v. Devaney*, 109 F.4th 322, 326 (5th Cir. 2024). Courts first "determine whether the good-faith exception to the exclusionary rule applies." *Id*. Through this exception, evidence obtained in a warranted search should not be excluded if the officer's reliance on the warrant was objectively reasonable. *Id*. Next, "only if the good-faith exception is inapplicable", the court reviews whether the magistrate judge had a substantial basis for finding probable cause, "a showing of the probability of criminal activity." *Id*. (quoting *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004)).

Defendant reasons that the affidavit contains "zero connection between Garry Boyd and dog fighting".[8] In support, he complains Detective Waters's affidavit lacked probable cause due to (1) his name being misspelled in one section as to the ownership of the property in the search warrant application, (2) the drone search of the property was conducted ten days prior to filing the affidavit, and (3) it provided conclusory statements instead of reasons as to why the house related to dog breeding or fighting.[9]

In response to misspelling, the Government claims page one and two of the search warrant application lists Boyd as the parcel owner.[10] The government also contends Waters's affidavit (a) explained how investigators recorded a dog-fighting event, (b) identified Darrell Boyd's vehicle's license plate from participants leaving the event, (c) Darrell was seen regularly visiting Garry Boyd's Chappell St. property's neighborhood to tend to dogs, (d) a 2022 map view of the property showed ground patterns consistent with the prolonged tethering and containment of dogs for dog

[7] Pl.'s Resp. Mot. Suppress 10, ECF No. 29.
[8] Def. Mot. Suppress 4, ECF No. 27.
[9] *Id.*
[10] Pl.'s Resp. Mot. Suppress 2, ECF No. 29.

fighting, (e) the drone search of Defendant's property confirmed the current presence of at least four pit-bull dogs secured by heavy chains with ground patterns that are consistent with training dogs for fighting.[11] Thus, the Government argues the affidavit painted "a picture" which "a reasonable, well-trained officer would have no reason to doubt the magistrate judge's probable-cause determination and would have believed he was legitimately authorized to search Garry Boyd's property for evidence of dog fighting and training to shed light on Darrell Boyd's criminal conduct and Garry Boyd's involvement in permitting his property to be used for such."[12]

The Court finds Defendant's contentions, even if taken at face value, would not show that Detective Waters's affidavit is barebones. Unlike bare-bones affidavits, which "do not detail any facts" and "allege only conclusions," *Morton*, 46 F.4th 331, 337 (5th Cir. 2022) (en banc), the one used to search Defendant's property "put all the relevant facts and circumstances" before the magistrate judge, allowing him to independently determine if the probable cause standard was met. Affidavits in support of search warrants should be interpreted in a "commonsense" manner. *See United States v. Moore*, 805 F.3d 590, 595 (5th Cir. 2015).

The affidavit described the tracing of Darrell Boyd's vehicle to regular trips to Garry Boyd's neighborhood, mapping imagery of the property showing ground patterns consistent with containment of dogs, and a drone survey confirming the current presence of at least four pit bulls secured by heavy chains in a configuration consistent with training dogs for fighting.[13] The affidavit claims the drone surveillance places each dog near each other, but just out of reach, possibly for heightening territorial and aggressive behavior for fighting.[14] An objectively reasonable officer presented with these facts would have no reason to doubt the magistrate judge's

---

[11] *Id* at 10.
[12] *Id.* at 11.
[13] Pl. Ex. 1 at 5, ECF No. 30.
[14] *Id.*

determination or the legality of the search warrant.[15] *United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) (reiterating that "not every deficient warrant is so deficient that an officer would lack a reasonable basis for relying on it"). Therefore, the Court determines that the good-faith exception applies.

Since the good-faith exception applies, "our analysis ends" and "we need not reach the question of probable cause." *Cavazos*, 288 F.3d at 709 (quoting *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)). The Court need not reach the second step of the good-faith exception to the exclusionary rule inquiry.

## IV. CONCLUSION

For the foregoing reasons, Defendant Garry Boyd's Motion to Suppress (ECF No. 27) is **DENIED**. Because Defendant has not made the showing required to warrant a *Franks* hearing, his request for an evidentiary hearing is also **DENIED.**

**SO ORDERED.** Signed the **2nd day of October, 2026.**

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[15] *Id.*